UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TM BOYCE FEED AND GRAIN, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2490-B |
| | § | |
| NVENIA, LLC, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant nVenia, LLC ("nVenia")'s Motion to Transfer Venue and to Dismiss (Doc. 14). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. The Court **DENIES** the Motion with respect to the requested transfer under 28 U.S.C. § 1404(a) and dismissal of Plaintiff TM Boyce Fee and Grain, LLC ("TM Boyce")'s claim for breach of contract under Federal Rule of Civil Procedure 12(b)(6). The Court **GRANTS** the Motion with respect to the requested dismissal of TM Boyce's claims for common law fraud, negligent misrepresentation, and unjust enrichment.

I.

BACKGROUND

This case primarily concerns the alleged failure to keep promises. TM Boyce sells animal feed and grain products. Doc. 9, Am. Compl., ¶ 5.  It packages those products in bags. *See id.* ¶ 15. nVenia sells packaging machines and related services. *Id.* ¶ 6. TM Boyce purchased one of nVenia's machines but claims that it did not operate as nVenia promised. *Id.* ¶¶ 12, 47–48. This lawsuit followed.

TM Boyce is based out of Waxahachie, Texas, and "is an industry leader in product innovation and the development of animal feed and grain products." *Id.* ¶ 5. nVenia is based out of Illinois and "markets itself as being the innovator in packaging equipment." *Id.* ¶ 6; Doc. 15-1, Def.'s App'x, 3. TM Boyce and nVenia's commercial relationship began in 2015, when TM Boyce purchased two packaging machines from nVenia. Doc. 9, Am. Compl., ¶ 9. For nearly a decade since, "nVenia's representatives have traveled to Texas to meet and work with [TM] Boyce at its headquarters in Waxahachie, Ellis County, Texas." *Id.*

The events giving rise to this litigation began in the fall of 2022. *See id.* At that time, TM Boyce was in the market for a new packaging machine that could "bag[] and palletiz[e] 25 to 50 pound bags of animal feed and grain products" at a rate of at least "16 to 18 bags per minute." *Id.* ¶ 15. TM Boyce turned to its long-time commercial partner, nVenia, to supply such a machine. *Id.* ¶ 9. Starting in October 2022, "the parties engaged in extensive communications consisting of emails, text messages, and telephone conference calls, all with [TM] Boyce's employees in Texas." *Id.* The next month, nVenia's representatives met with TM Boyce at its Waxahachie manufacturing facility. *Id.* ¶ 46; Doc. 15-1, Def.'s App'x, 3. During this meeting, nVenia apparently stated that it could design, manufacture, deliver, and install a new machine for TM Boyce that could "operate at 18-20 bags per minute on 50 lb. bags." Doc. 9, Am. Compl., ¶ 46.

Following these preliminary negotiations, nVenia sent TM Boyce a price quotation for the new machine (the "Quote"). *Id.* ¶ 9–10; Doc. 15-1, Def.'s App'x, 8–25. The Quote was for "an automatic bagging system designed to bag and palletize 40 to 50 pound bags of various animal feed and grain products at a 14 to 16 bags per minute rate." Doc. 9, Am. Compl., ¶ 9. The Quote set forth the items for sale, their price, a payment schedule, and anticipated delivery date. Doc. 15-1,

Def.'s App'x, 9–17. The Quote also contained certain terms and conditions, two of which are relevant here. *See id.* at 23–24. The first is the "Acceptance" provision:

> ACCEPTANCE. This [Quote] furnished by nVenia is not binding upon nVenia until (i) actual receipt by nVenia of Buyer's written purchase order ("Purchase Order") adopting the Proposal and all of the terms and conditions stated herein, without qualification, within 30 days after the date hereof, and (ii) nVenia's written acceptance of such Purchase Order at its main office in Wood Dale, Illinois. A Proposal is valid only for 30 days from date thereof.

*Id.* at 23. The second relevant term and condition of the Quote is the "Governing Law" provision:

> GOVERNING LAW. This Agreement[1] and the sale of all Products shall be governed by and construed in accordance with the laws of the State of Illinois. Whenever there is a conflict of laws, the laws of the State of Illinois shall prevail. Any claim arising out of or in any way related to this Agreement shall be instituted and adjudicated in either the Federal District Court for the Northern District of Illinois or in the Circuit Court of DuPage County, Illinois. The parties consent to and agree not to contest the personal jurisdiction of and venue in such courts, acknowledge that these forums are convenient and waive their rights to demand a jury trial.

*Id.* at 24.

TM Boyce received the Quote on November 14, 2022, but never sent nVenia a written purchase order. *See* Doc. 9, Am. Compl., ¶¶ 9–11. Instead, on November 16, 2022, TM Boyce purported to verbally accept the Quote. Doc. 15-1, App'x, 4. In response, "nVenia acknowledged and accepted TM Boyce's verbal acceptance." Doc. 15, Mot. Br., 3. Thereafter, nVenia sent TM Boyce a written acknowledgement of nVenia's acceptance in the form of an "Order Acknowledgement." *See id.*; Doc. 15-1, Def.'s App'x, 24, 52–53. The Order Acknowledgement states that it is "Based off of [the] Quote," and sets forth the items to be manufactured, their price, the payment terms, and the delivery dates. *See* Doc. 15-1, Def.'s App'x, 27–28, 52–53. However, the Order Acknowledgement contains no forum-selection clause. *See id.*

---

[1] The Quote defines "Agreement" as "[t]he [Quote] and Buyer's Purchase Order." *Id.*

On November 17, 2022, nVenia invoiced TM Boyce for its purchase. *Id.* at 55–56. The invoice requested that TM Boyce pay 10% of the total price of the machine—$75,346.60—as a down payment. *See id.* TM Boyce paid the invoice on November 22, 2022. Doc. 9, Am. Compl., ¶ 18.  TM Boyce made at least three additional payments to nVenia following this initial invoice. *Id.* ¶ 34.

Meanwhile, nVenia began delivery and installation of the machine to TM Boyce's Texas facility in June of 2023. *See id.* ¶ 24. TM Boyce, however, quickly noticed that the machine was defective. *Id.* ¶ 47. Specifically, TM Boyce claims that the machine "delivered by nVenia averages 8-14 bags per minute, not the promised 18-20 bags per minute." *Id.* ¶ 48. As a result, TM Boyce contends that it has lost production and revenue. Id.

On November 8, 2023, TM Boyce initiated this lawsuit against nVenia seeking to recover damages. *See generally* Doc. 1, Compl. TM Boyce's operative pleading, its "First Amended Original Complaint," asserts four claims against nVenia: (1) common law fraud; (2) negligent misrepresentation; (3) breach of contract; and (4) unjust enrichment. Doc. 9, Am. Compl., ¶¶ 44–58. In lieu of an answer, nVenia filed the present Motion to Transfer and Dismiss on February 13, 2024. *See* Doc. 14, Mot. nVenia seeks to transfer this matter to the United States District for the Northern District of Illinois under 28 U.S.C. § 1404(a) in light of the forum-selection clause contained within the Governing Law provision of the Quote. *Id.* at 2. nVenia separately moves to dismiss each of TM Boyce's claims under Federal Rule of Civil Procedure 12(b)(6). *Id.* nVenia's Motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

A.    *28 U.S.C. § 1404(a)*

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division if (1) the plaintiff could have brought that action there originally and (2) the transfer would be for "the convenience of parties and witnesses, and in the interests of justice . . . ." 28 U.S.C. § 1404(a). The party seeking transfer bears the burden of proving both elements. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc); *Calloway v. Triad Fin. Corp.*, 2007 WL 4548085, at *2 (N.D. Tex. Dec. 27, 2007) (Boyle, J.). The parties do not dispute the first element. Therefore, the only issue is whether the transfer would be for the convenience of parties and witnesses and in the interests of justice.

B.    *Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

nVenia moves to transfer this case under § 1404(a) and to dismiss TM Boyce's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 14, Mot., 2. The Court first addresses TM Boyce's Motion to Transfer first, before tuning to its Motion to Dismiss.

A.      *Motion to Transfer Under § 1404(a)*

nVenia seeks to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a). *See* Doc. 14, Mot., 2. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Generally, "[t]ransfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party 'clearly establishes good cause' by 'clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.'" *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). "[T]o to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be significant, and (2)

that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.* (emphasis omitted). And in assessing whether the movant has carried his burden, a district court "must" consider a bevy of private- and public-interest factors.[2] *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

However, where, as here, "a § 1404(a) motion is premised on a contractual provision purporting to select an exclusive judicial forum, the calculus shifts from the § 1404(a) private- and public-interest factors typically considered." *Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*, 646 F. Supp. 3d 795, 799–800 (W.D. Tex. 2022), *objections overruled*, No. SA-22-CV-00767-JKP, 2023 WL 2145555 (W.D. Tex. Feb. 16, 2023); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."). An enforceable forum-selection clause governing the dispute alters the § 1404(a) analysis in three ways. First, the non-movant plaintiff, "as the party defying the forum-selection clause, . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const.*, 571 U.S. at 63. Second, district courts are to disregard the private-interest factors and consider the propriety of transfer under § 1404(a) solely in light of the public-interest factors. *See id.* at 64 ("[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."). "Third, when

---

[2] There are a total of eight private- and public-interest factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Clarke*, 94 F.4th at 509 (citations omitted). The public interest factors are: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citations omitted).

a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

However, there are at least four prerequisites to the application of this altered § 1404(a) analysis. First, the movant must demonstrate the existence of a contract which contains a forum selection clause. *See J.D. Fields & Co. v. Shoring Engineers*, 391 F. Supp. 3d 698, 702 (S.D. Tex. 2019); *D.A. Schoggin, Inc. v. Arrow Elecs., Inc.*, No. 3:19-CV-02830-L, 2020 WL 7027469, at *2 (N.D. Tex. Nov. 30, 2020) (Lindsay, J.). Second, the claims sought to be transferred must fall within the scope of the forum-selection clause. *See Brown v. Federated Cap. Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014). Third, the forum-selection clause must be mandatory rather than permissive. *See DM Trans, LLC v. Scott*, No. 1:21-CV-505-RP, 2021 WL 2864885, at *4 (W.D. Tex. July 8, 2021); *see also LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 828 (N.D. Tex. 2013) (Boyle, J.). Fourth, the forum-selection clause must not be unreasonable as a matter of federal law. *See Matthews v. Tidewater, Inc.*, 108 F.4th 361, 367 (5th Cir., 2024).

If each of these prerequisites is satisfied, then the altered § 1404(a) analysis described above governs—i.e., the nonmovant bears the burden of demonstrating that the four public-interest factors militate against transfer. *See Atl. Marine Const.*, 571 U.S. 49, 63–64. But if any one of these prerequisites is absent, the traditional § 1404(a) analysis governs, meaning the movant bears the burden to clearly demonstrate good cause for transfer in light of the eight private- and public-interest factors. *See Clarke*, 94 F.4th at 509.

The Court concludes that nVenia has failed to demonstrate that the parties' contract contains a forum-selection clause. Accordingly, the traditional § 1404(a) analysis applies. And

applying that framework to this case, the Court concludes that nVenia has not discharged its burden to show good cause for transfer.

    1.    The Parties' Contract Does Not Contain a Forum-Selection Clause

Before a court may apply the altered § 1404(a) analysis set forth by the Supreme Court in *Atlantic Marine Construction Co.*, the movant must demonstrate the existence of a contract that contains a forum-selection clause. *See Shoring Engineers*, 391 F. Supp. 3d at 702; *D.A. Schoggin*, 2020 WL 7027469, at *2. The Court concludes that nVenia, the movant, failed to establish the existence of such a contract.

At the outset, the Court notes that the parties seem to agree that they entered into a valid contract. *Compare* Doc. 15, Mot. Br., 1–3, *with* Doc. 17, Resp. Br., 9. The only issue is whether that contract contains a forum-selection clause. *Cf.* Doc. 17, Resp. Br., 9. To ascertain the terms of the parties' contract—and whether a forum-selection clause is contained within those terms— the Court looks to the manner in which the contract was formed. *See Crest Ridge Const. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring) ("In deciding whether a contract was formed and its subsequent terms, it is critical to determine which is the 'offer' capable of being accepted.").

The parties agree that this dispute, which concerns the purchase of machinery, is governed by the Texas version of the Uniform Commercial Code ("UCC"). *See* Doc. 15, Mot. Br., 6; Doc. 17, Resp. Br., 7; *see also* TEX. BUS. & COM. CODE § 2.102 ("[T]his chapter applies to transactions in goods."). "Under the UCC, a contract is formed for the sale of goods by an offer and acceptance." *Summit Glob. Contractors, Inc. v. Enbridge Energy, Ltd. P'ship*, 594 S.W.3d 693, 700 (Tex. App.— Houston [14th Dist.] 2019, no pet.); *see also* TEX. BUS. & COM. CODE § 2.204(a) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both

parties which recognizes the existence of such a contract."). "An offer is an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal." *Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*, 7 F.3d 1230, 1232–33 (5th Cir. 1993). With respect to acceptance, the UCC provides that, "[u]nless otherwise unambiguously indicated by the language or circumstances[,] . . . an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." Tex. Bus. & Com. Code § 2.206(a)(1).

nVenia contends that the Quote it sent to TM Boyce on November 14, 2022, constitutes an offer. *See* Doc. 15, Mot. Br., 6–8; Doc. 27, Reply, 2–3. The Quote's Governing Law provision contained a forum-selection clause, which nVenia argues became a part of the parties' contract when TM Boyce verbally accepted the Quote. *See* Doc. 15, Mot. Br., 6–9. Doc. 15, Mot. Br., 7–8. The Court disagrees that the Quote was an offer capable of acceptance.

While "[a] sufficiently detailed price quotation can be an offer," *ETC Intrastate Procurement Co., LLC v. JSW Steel (USA), Inc.*, 620 S.W.3d 168, 174 (Tex. App.—Houston [14th Dist.] 2021, no pet.), it will only operate as such if it "reasonably appear[s] from the price quotation that mere assent to the quote will bind both parties to a contract." *Delta Brands, Inc. v. Wysong & Miles Co.*, No. CA 3:97-CV-1935-BC, 1998 WL 641810, at *3 (N.D. Tex. Sept. 14, 1998) (Boyle, M.J.). Thus, "[a] price quote that is subject to the seller's confirmation is not an offer because the buyer's assent will not consummate the contract." *Crest Ridge Const.*, 78 F.3d at 152 (5th Cir. 1996) (Benavides, J., concurring). In that case, "the quotation . . . would only be an invitation for an offer." *Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*, 7 F.3d 1230, 1233 (5th Cir. 1993).

Here, the Quote was a mere invitation to offer. *See id.; Maverick Int'l, Ltd v. Occidental Mukhaizna LLC,* No. 1:10CV782, 2011 WL 13134197, at *4 (E.D. Tex. Mar. 1, 2011). The Quote's "Acceptance" provision provides:

> This [Quote] . . . *is not binding* upon nVenia *until* (i) actual receipt by nVenia of [TM Boyce's] written purchase order ("Purchase Order") adopting the [Quote] and all of the terms and conditions stated herein, without qualification, within 30 days after the date hereof, and (ii) *nVenia's written acceptance* of such Purchase Order at its main office in Wood Dale, Illinois.

Doc. 15-1, App'x, 23, 48 (emphasis added). Given that the Quote is expressly conditioned on nVenia's acceptance of TM Boyce's written purchase order, it does not reasonably appear from the terms of the Quote that TM Boyce's assent alone will consummate the contract. *See Stanwood Boom Works, LLC v. BP Expl. & Prod., Inc.*, 476 F. App'x 572, 575 (5th Cir. 2012); *Shoring Engineers*, 391 F. Supp. 3d at 703. nVenia nevertheless argues that as "the beneficiary of the written acceptance requirement, [it] waived the requirement[] and manifested its assent to allow TM Boyce to verbally accept the [Quote] by acknowledging . . . TM Boyce's verbal acceptance." Doc. 15, Mot. Br., 8. But because the Quote was not an offer, any manifestation of assent to its terms— whether written or verbal—simply could not operate as an acceptance. *See Shoring Engineers*, 391 F. Supp. 3d at 703. Thus, there would be no acceptance even had TM Boyce complied with the written-purchase-order requirement; it follows there likewise would be no acceptance where the same requirement is waived.

Moreover, the Court notes that if, as nVenia claims, the Quote itself was intended to serve as the offer, and the written purchase order the acceptance, the second condition in the Acceptance provision—requiring nVenia's acceptance of TM Boyce's purchase order—would be superfluous. *Cf. In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) ("The Court must read

contractual provisions so none of the terms of the agreement are rendered meaningless or superfluous."). Upon TM Boyce's delivery of the written purchase order, the contract would be consummated and there would be nothing left for nVenia to accept.[3] *See* TEX. BUS. & COM. CODE § 2.207(a). Consistent with the analysis above, the best reading is that the Quote was an invitation to TM Boyce to make an offer in the form of a purchase order, which could be accepted or rejected by nVenia. *See Axelson*, 7 F.3d at 1233.

Because the Quote was not an offer, TM Boyce's verbal acceptance of the quote could not have been an acceptance. *See id*. And even assuming a contract was formed at some later time time, the only evidence as to its terms is an Order Acknowledgement sent by nVenia. *See* Doc. 15-1, Def.'s App'x, 27–28, 52–53. That Acknowledgement sets forth the items to be manufactured, their price, payment terms and delivery dates, but it does not contain any forum-selection clause. *See id*. And though the Order Acknowledgement states that it is "Based off of [the] Quote," *id*. at 27, 52, this alone is insufficient to incorporate the terms and conditions of the Quote—including the forum selection clause—within the scope of the parties' agreement. "[T]o incorporate the terms of another document in Texas, 'the writing referencing another writing must be signed'" by the party sought to be charged. *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 449 (N.D. Tex. 2019) (Ramirez, M.J.) (quoting *Indicium Digital Network, LLC v. CDW Direct, LLC*, No. EP-17-CV-00054-FM, 2018 WL 2410991, at *5 (W.D. Tex. Jan. 19, 2018)). Here, neither the Order Acknowledgement nor the Quote was signed by TM Boyce. *See* Doc. 15-1, Def.'s App'x, 8–25, 27–28, 33–50, 52–53. Thus, the Order Acknowledgement's mere reference to the Quote is

---

[3] The Acceptance provision requires that TM Boyce's written purchase order "adopt[] the [Quote] and all of the terms and conditions stated [therein], *without qualification*[.]." Doc. 15-1, Def.'s App'x, 48 (emphasis added).

insufficient to bring the terms and conditions of the Quote into the parties' contract. *See Indicium Digital Network*, 2018 WL 2410991, at *5.

In sum, the Court cannot say that a contract with a forum-selection clause exists here. The forum-selection clause only appears in the Quote. The Quote was not an offer capable of acceptance because assent to its terms would not have given rise to a contract. And while it appears the parties formed a contract some time after the Quote was sent, the only evidence of the terms of that contract is the Order Acknowledgement, which contains no forum-selection clause. Accordingly, the Court concludes that there is no forum-selection clause in the parties' contract. It thus proceeds to the traditional § 1404(a) analysis.

2.   The Court Declines to Transfer the Case Under § 1404(a)

As explained, nVenia seeks to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a). *See* Doc. 14, Mot., 2. But because nVenia has not demonstrated that the parties' contract contains a forum-selection clause, the Court analyzes nVenia's Motion to Transfer Venue using the traditional § 1404(a) framework. Under that framework, "[i]t is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *Clarke*, 94 F.4th at 508 (quoting *Bruck*, 30 F.4th at 433). In assessing whether the movant has discharged this burden, district courts must consider the following private- and public-interest factors:

> The private-interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public-interest factors are (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 509 (citations and quotations omitted). Upon consideration of these eight factors, the Court concludes that nVenia has not carried its burden to clearly demonstrate good cause for transfer under § 1404(a).

To begin, nVenia makes no argument with respect to the four-private interest factors. *See* Doc. 15, Mot. Br., 9–12. As the burden is on nVenia to demonstrate that transfer is warranted, the Court concludes that each of the private-interest factors weighs against transfer.

That leaves the public interest factors. First, even assuming the relative court congestion between the Northern District of Texas and the Northern District of Illinois weighs in favor of transfer, "this Court has not given this factor much weight, due to its speculative nature." *Trans World Logitec, Inc. v. Samsung SDS Glob. SCL Am., Inc.*, No. 3:19-CV-1397-B, 2019 WL 5213437, at *6 (N.D. Tex. Oct. 15, 2019) (Boyle, J.). The remaining three public-interest factors weigh strongly enough against transfer as to warrant denial of nVenia's Motion even if the Northern District of Illinois is slightly less congested.

Second, the local interest factor weighs against transfer because the facts giving rise to this case occurred primarily in Texas. "This public[-]interest factor considers whether the dispute at issue has a closer 'factual connection' with the transferee or the transferor venue." *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 825 (S.D. Tex. 2022) (alteration in original) (citation omitted). "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Id.* (citation omitted). Here, TM Boyce brings claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment. *See* Doc. 9, Am. Compl., ¶¶ 44–58. The fraud and negligent misrepresentation claims concern alleged falsities that were made in Texas, to a Texas resident, concerning a contract that was substantially to be performed in Texas. *See id.* ¶¶ 46–48. Similarly,

- 14 -

the breach of contract and unjust enrichment claims involve nVenia's allegedly deficient delivery and installation of machines in Texas. *Id*. ¶¶ 52–58. This factor weighs against transfer.

Third, nVenia has not shown that the courts in Illinois are more familiar with the law governing the case. *See Greyhound Lines, Inc. v. W. Trails Charters & Tours LLC*, No. 3:23-CV-2769-B, 2024 WL 3528649, at *6 (N.D. Tex. July 24, 2024) (Boyle, J.). While nVenia contends that Illinois law governs this case under the terms of the Quote, *see* Doc. 15, Mot. Br., 11, the Court has already concluded that the Quote—and thus its choice of law provision—is not a part of the parties' contract. *See supra* III.A.1. And nVenia makes no argument that Illinois law applies absent application the Quote's choice-of-law provision, and in fact relies exclusively on Texas caselaw in support of its arguments for dismissal under Rule 12(b)(6). *See* Doc. 15, Mot. Br., 13–21. Thus, the third factor weighs against transfer.

Fourth, transfer is not needed to avoid unnecessary conflict-of-law issues. When a case is transferred under § 1404(a), the transferor court's choice-of-law rules apply unless transfer is made pursuant to a forum-selection clause. *See Atl. Marine Const.*, 571 U.S. at 64–65. Here, Texas's choice-of-law rules would govern given the lack of a valid forum-selection clause. *See id*. Thus, transfer is not needed to avoid unnecessary conflict-of-law issues.

Accordingly, the Court concludes that nVenia has not carried its burden to demonstrate good cause for transfer. It made no arguments with respect to the four private interest factors and has made an insufficient showing as to three of the four public interest factors. As such, the Court **DENIES** nVenia's Motion to Transfer under § 1404(a).

*B.*     *12(b)(6) Motion to Dismiss*

nVenia also moves to dismiss TM Boyce's claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment under Rule 12(b)(6). Doc. 14, Mot., 2. The Court examines the sufficiency of the pleadings as to each of these claims.

<u>1.</u>     <u>Common Law Fraud</u>

TM Boyce first asserts a claim for common law fraud against nVenia.[4] Doc. 9, Am. Compl., ¶¶ 44–49. TM Boyce essentially claims that nVenia made a number of misrepresentations to TM Boyce in negotiating the parties' contract, that it relied on those misrepresentations in purchasing the machinery, and that it was damaged when the machine did not perform as nVenia represented. *See id.* nVenia moves to dismiss TM Boyce's fraud claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 14, Mot., 2. The Court concludes that TM Boyce failed to adequately plead a claim for fraud under Texas law.

In Texas, common law fraud claims consist of five elements:

> (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.

---

[4] In pleading its common law fraud claim, TM Boyce also appears claim that it was fraudulently induced into contracting with nVenia. *See* Doc. 9, Am. Compl., ¶ 45. "Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.'" *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 743 (N.D. Tex. 2014) (Boyle, J.) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Under Texas law, common law fraud and fraudulent inducement consist of the same elements, the only difference being that for a fraudulent inducement claim, "a plaintiff must establish the elements of fraud 'as they relate to an agreement between the parties.'" *Id.* (citing *Haase*, 62 S.W.3d at 798–99). To the extent TM Boyce intended to assert a claim for fraudulent inducement in addition to its common law fraud claim, the Court considers the two claims together.

*Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285, 291 (5th Cir. 2023) (citing *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019)). TM Boyce's common law fraud claim is subject to Rule 9(b)'s heightened pleading standard. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy Rule 9(b)'s particularity requirement, a plaintiff must allege the "specif[ic] . . . statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citations omitted).

TM Boyce alleges the following facts in support of its fraud claim. In November 2022, "nVenia's representative, nVenia, and Phillip Rham's representative, Jeremy Torres, met at [TM] Boyce's manufacturing facility" to discuss the potential purchase of a new bagging system by TM Boyce. Doc. 9, Am. Compl., ¶ 46. During this meeting, TM Boyce explained that it currently had "one 8800 scale, one fast track 5 scale, and two 3597 bag hangers." *Id.* In response "nVenia represented that its new system would operate at the same performance levels as [TM] Boyce's then 8800 scale," and specifically, "that the system would operate at 18-20 bags per minute on 50 lb. bags." *Id.* TM Boyce subsequently entered into a contract to purchase nVenia's new bagging system, largely on the basis of nVenia's representations regarding the system's capabilities. *Id.* However, "[t]hose representations were false," *id.* ¶ 49, because "the . . . system delivered by nVenia averages 8-14 bags per minute, not the promised 18-20 bags per minute." *Id.* ¶ 48. TM Boyce claims that nVenia "made those representations with knowledge of their falsity, or recklessly without knowledge of the truth and as positive assertions, and with the intent they should be acted on by [TM Boyce]." *Id.* ¶ 49. nVenia also allegedly "made promises to [TM Boyce] with no intent

to perform those promises at the time they were made." *Id.* TM Boyce claims it detrimentally relied on nVenia's representations and promises by contracting with nVenia. *Id.*

These allegations are insufficient to state a claim for fraud. To begin, TM Boyce fails to identify the specific speaker who made the allegedly fraudulent statement. *See Kelly L. Firm, P.C. v. An Att'y for You*, 679 F. Supp. 2d 755, 773 (S.D. Tex. 2009) ("Plaintiffs' fraud allegations fail to specify any specific speaker making a fraudulent statement or omission."). TM Boyce only alleges that "nVenia's representative, nVenia, . . . met at [TM] Boyce's manufacturing facility" and that during this meeting "nVenia made" false representations. Doc. 9, Am. Compl., ¶¶ 46, 49. But without pleading the specific representative speaking on its behalf, the Court finds the allegation that "nVenia made" false representations insufficient for purposes of Rule 9(b). *See An Att'y for You*, 679 F. Supp. 2d at 773.

More fundamentally, TM Boyce fails to allege that nVenia's representations were false or that nVenia knew they were such when made. nVenia's representations regarding its machine's capabilities were in essence promises of future performance, and in Texas, "'[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.'" *Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285, 292 (5th Cir. 2023) (alterations in original) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). Although TM Boyce alleges that "nVenia made promises to [TM Boyce] with no intent to perform those promises at the time they were made," the Amended Complaint is devoid of any factual allegations that would support such an inference. *See* Doc. 9, Am. Compl., ¶ 49; *Wesdem, L.L.C.*, 70 F.4th at 292 ("While [plaintiff] alleges that the promise was false and that [defendant] knew it was false, these conclusory allegations are unadorned and devoid of further factual enhancement." (citations omitted)). The only fact alleged which might suggest

nVenia's representations were false when made is that nVenia did not deliver on its promise. *See* Doc. 9, Am. Compl., ¶¶ 47–48. But while nonperformance "is a circumstance to be considered," on its own, the "[f]ailure to perform . . . is no evidence of the promissor's intent not to perform when the promise was made." *Spoljaric*, 708 S.W.2d at 435; *see Wesdem, L.L.C.*, 70 F.4th at 293. As such, TM Boyce's allegations fall short.

In sum, TM Boyce failed to plead its fraud claim. It has not identified the specific speaker of the alleged misrepresentations and failed to allege facts supporting the plausible inference that the claimed misrepresentations were false when made. Therefore, TM Boyce's common law fraud claim is **DISMISSED WITHOUT PREJUDICE**.

### 2.   Negligent Misrepresentation

TM Boyce also brings a claim for negligent misrepresentation, which relies on the same set of factual allegations as the common law fraud claim. *See* Doc. 9, Am. Compl., ¶ 50.  "When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard generally applies to both." *Hoffman*, 23 F. Supp. 3d at 747. Here, TM Boyce alleges no distinct facts in support of its negligent representation claim. Accordingly, for the same reasons that its common law fraud claim fails, TM Boyce's negligent misrepresentation claim fails. But the bigger issue is that under Texas law, "[p]romises of future conduct are insufficient to support a claim for negligent misrepresentation." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 749 (E.D. Tex. 2013). As explained above, TM Boyce relies exclusively on promises of future performances made by nVenia to support its claims. Therefore, TM Boyce's negligent misrepresentation claim is **DISMISSED WITH PREJUDICE**.

**3.**      Breach of Contract

nVenia next moves to dismiss TM Boyce's claim for breach of contract. Doc. 14, Mot., 2. TM Boyce alleges that it entered into a valid contract for the purchase of machinery from nVenia and that nVenia breached this contract "by failing to have the [m]achines crated and shipped properly and timely and installed and tested in Plaintiff's Waxahachie facility." *Id.* ¶ 55. The Court thinks that the Amended Complaint, while not a model of clarity, contains sufficient factual allegations to state a claim for relief.

"Under Texas law, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Roberts v. Overby-Seawell Co.*, No. 3:15-CV-1217-L, 2018 WL 1457306, at *7 (N.D. Tex. Mar. 23, 2018) (Lindsay, J.) (alteration in original) (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

The Amended Complaint contains factual allegations in support of each element of TM Boyce's contract claim. First, TM Boyce alleged the existence of a valid contract. TM Boyce avers that it "enter[ed] into an agreement for the purchase of nVenia's newly designed [bagging] system." Doc. 9, Am. Compl., 2. Under the terms of that contract, "nVenia agreed to configure, crate, and ship integrated packaging machines . . . and, after delivery of those [m]achines to Texas, to send its employees to Texas to install and test those Machines in [TM Boyce's] Texas facility." *Id.* ¶ 12. In return, TM Boyce agreed to pay nVenia a fee. *See id.* ¶¶ 34–36. Second, TM Boyce alleged that it performed under the contract by tendering "payments to nVenia in the amount of $709,886.19." *Id.* ¶ 36. Third, TM Boyce alleges that "nVenia materially breached its contractual obligations under the [a]greement by failing to have the [m]achines crated and shipped properly and timely

and installed and tested in [TM Boyce's] Waxahachie facility." *Id*. ¶ 55. Fourth, TM Boyce claims it was damaged a result of nVenia's breach because it lost sales it otherwise could have completed had it received a properly working system. *Id*. ¶ 56.

"Although these allegations are only borderline adequate," *Hunter v. Navy Fed. Credit Union*, No. 3:24-CV-0788-D, 2024 WL 3094610, at *6 (N.D. Tex. June 20, 2024) (Fitzwater, J.), TM Boyce nevertheless alleges facts which, taken as true, plausibly support each element of its contract claim. Accordingly, the Court **DENIES** nVenia's Motion as to TM Boyce's breach of contract claim.

### 4.   Unjust Enrichment

Lastly, nVenia moves to dismiss TM Boyce's claim for unjust enrichment. In support of this claim, TM Boyce generally alleges that, "[b]y its wrongful conduct described [in the Amended Complaint], nVenia wrongfully and unjustly obtained and retained an economic benefit at the detriment of [TM Boyce] by fraud, the taking of undue advantage, and/or other inequitable circumstances." Doc. 9, Am. Compl., ¶ 58. nVenia contends that, under Texas law, a plaintiff cannot maintain an action for unjust enrichment where there is a valid contact between the parties. *See* Doc. 15, Mot. Br., 21. And because the Amended Complaint alleges a valid and enforceable contract, nVenia argues that TM Boyce's unjust enrichment claim must be dismissed. *See id*. at 21–22. The Court agrees with nVenia.

"Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 671 (N.D. Tex. 2014) (Fitzwater, J.) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). This is because "[w]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the

express agreement." *Id.* (citing *Fortune Prod. Co.*, 52 S.W.3d at 684). "Accordingly, because a claim for unjust enrichment is 'based on quasi-contract,' it is 'unavailable when a valid, express contract governing the subject matter of the dispute exists.'" *Id.* (quoting *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996, writ granted), *aff'd sub nom.*, *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467 (Tex.1998)). "Thus, in general, unless one party 'disputes the existence of a contract that governs the parties' relationship,' [a plaintiff] cannot maintain an unjust-enrichment counterclaim—even if pleaded in the alternative." *See JPM Restoration, Inc. v. ARES LLC*, No. 3:20-CV-3160-B, 2021 WL 487696, at *3 (N.D. Tex. Feb. 10, 2021) (Boyle, J.) (citing *TIB*, 13 F. Supp. 3d at 672). The Supreme Court of Texas, however, has recognized a limited exception to this general rule to allow unjust enrichment claims proceed for overpayments under a valid contract. *See Sw. Elec. Power*, 966 S.W.2d at 469–71.

Here, the Amended Complaint clearly alleges—and the parties do not dispute—the existence of a valid contract governing the dispute. *See* Doc. 9, Am. Compl., ¶ 35 ("By at least August 22, 2022, an enforceable contract existed based on the terms offered by nVenia in the communications and invoices leading up to [TM] Boyce's four payments[.]"); *compare* Doc. 15, Mot. Br., 9 ("Under these facts and Texas law, the parties unquestionably entered into the Agreement . . . ."), *with* Doc. 17, Resp. Br., 9 ("[A]n enforceable contract did exist between the parties based on the terms offered . . . ."). And the limited exception to the bar on unjust enrichment claims where there is no dispute as to the existence of a valid contract is inapplicable because TM Boyce does not allege that it overpaid under the parties' contract. *See Sw. Elec. Power*, 966 S.W.2d at 469–71. Instead, TM Boyce, through its unjust enrichment claim, seeks to recover amounts paid under that contract as a result of nVenia's alleged "nonperformance." Doc. 17, Resp. Br., 23. Because neither TM Boyce nor nVenia disputes the existence of a valid contract governing

the parties' relationship, and because TM Boyce is not seeking recovery of overpayments under that contract, TM Boyce's claim for unjust enrichment cannot proceed as either a primary or alternative cause of action. *See TIB*, 13 F. Supp. 3d at 672; *JPM Restoration*, 2021 WL 487696, at *3–4.

In sum, TM Boyce cannot state a claim for unjust enrichment in light of the undisputed existence of a valid contract between the parties. Therefore, TM Boyce's unjust enrichment claim is **DISMISSED WITH PREJUDICE**.

## IV.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** nVenia's Motion to Transfer and Dismiss (Doc. 14). The Court **DENIES** the Motion with respect to the requested transfer under 28 U.S.C. § 1404(a) and dismissal of TM Boyce's claim for breach of contract under Federal Rule of Civil Procedure 12(b)(6). The Court **GRANTS** Motion with respect to the requested dismissal of TM Boyce's remaining claims under Rule 12(b)(6). TM Boyce's claim for common law fraud claim is **DISMISSED WITHOUT PREJUDICE** and its negligent misrepresentation and unjust enrichment claims are **DISMISSED WITH PREJUDICE**. Should TM Boyce elect to amend its complaint to replead its common law fraud claim, it must do so within **twenty-one (21)** days of the date of this Order.

SO ORDERED.

SIGNED: September 3, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE